FILED
CLERK

June 20, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JAMES ALLEN et al.,

                       Plaintiffs,

           -against-

COUNTY OF NASSAU,

                       Defendant.
-----------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

22-CV-1572 (JMW)

**A P P E A R A N C E S:**

Louis D. Stober, Jr., Esq.
**Law Offices of Louis D. Stober, Jr., LLC**
98 Front Street
Mineola, NY 11501
*Attorney for Plaintiffs*

Deanna Darlene Panico, Esq.
Rhoda Yohai Andors, Esq.
**Bee Ready Fishbein Hatter & Donovan, LLP**
170 Old Country Road
Mineola, NY 11501
*Attorneys for Defendant*

**WICKS,** Magistrate Judge:

       Plaintiffs, who work as Fire Communications Technicians ("FCTs"), commenced this

action on March 22, 2022 against the County of Nassau alleging, *inter alia,* violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* for failure to pay the appropriate

overtime wages for Plaintiffs' work spent on the job, and the Equal Pay Act, 29 U.S.C. §

206(d)(1) for failure to pay male Plaintiffs at the same rate as female Police Communications

Operators ("PCOs").[1]  Parties have come together and chosen to resolve this FLSA action.

Before the Court is Plaintiff's motion for approval of the proposed settlement agreement.  (DE

31.)  For the following reasons, Plaintiffs' motion is granted, and the proposed settlement

agreement is therefore approved.

## BACKGROUND

The following facts are drawn from Plaintiffs' Amended Complaint.  (DE 10.)  Plaintiffs

work for the Nassau County Fire Commission, Office of Fire Marshal, Fire Communications

Bureau as Fire Communication Technicians I and Fire Communication Technicians II.  (*Id.* ¶ 23

at 9.)  Their duties involve receiving 911 calls from Nassau County's emergency system and

triaging each call so that aid can be dispatched appropriately.  (*Id.*)  Plaintiffs' union and

Defendant set a schedule for all FCT Is and IIs whereby employees would work 12 hours for

three days a week and then receive three days off.  (*Id.* ¶¶ 24-26 at 9.)  This results in four 12-

hour shifts every six weeks, with compensation paid for only three days, not four.  (*Id.* ¶ 27 at 9.)

Plaintiffs also allege that they do not receive any breaks during these 12-hour shifts.  (*Id.* ¶ 28 at

9.)  Finally, Plaintiffs also allege that they were not paid the proper overtime rate for more than

40 hours worked despite working over 48 hours per week.  (*Id.* ¶¶ 30-33 at 9-10.)

Plaintiffs allege that Defendants have not given breaks to the predominantly male FCT Is

and FCT IIs although the predominantly female Police Communications Operators and Police

---

[1] This case is but one of several related cases.  In *Chodkowski et al. v. County of Nassau*, No. 16-CV-5770
(JMW), 2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021), this Court approved a three-million-dollar
settlement for over 200 PCOs and their supervisors for claims of unpaid wages under the FLSA.  After
that action, a small group of PCOs who were hired after the *Chodkowski* collective action opt-in period
came forward alleging the same claims.  *See Aamodt et al. v. County of Nassau*, 22-CV-1520-JMW, 2023
U.S. Dist. LEXIS 44547 (E.D.N.Y. Mar. 16, 2023) (approval of FLSA settlement payment of $41,750
and $20,000 in attorney's fees and costs).  And *Allen* is part of a trinity of cases involving similarly
situated Plaintiffs alleging claims under the FLSA.  *See Davidson et al. v. County of Nassau*, No. 18-
1182; *Abbananto et al. v. County of Nassau*, No. 19-1102.

Communications Operators are given 30-minute paid breaks and an hour lunch after working 12-hour shifts.  (*Id.* ¶ 3 at 2.)  Plaintiffs state that this violates the terms of the *Ebbert v. Cnty. of Nassau* settlement agreement, in which "the County agreed to equalize the pay and terms and conditions for [Police Communications Operators and Supervisors] and [FCT Is and FCT IIs]."  (*Id.* ¶ 5 at 2.)

On April 19, 2022, Plaintiffs filed their Amended Complaint asserting claims under the FLSA, Equal Pay Act, breach of the *Ebbert* Order, and Nassau County Government Law § 1307.  (*Id.* at 11-13.)  Defendant filed its Answer on November 17, 2022.  (DE 24.)  On May 13, 2022 Defendant moved for a pre motion conference on its anticipated motion to dismiss and Plaintiffs opposed.  (DE 12-13.)  Defendant filed its (1) motion to dismiss the *Ebbert* and § 1307 claims and (2) motion to disqualify Plaintiff's counsel from representing Plaintiff due to a conflict of interest.  (DE 18.)  Parties filed their respective opposition and reply.  (DE 20, DE 22.)  Judge Hector Gonzalez granted in part Defendant's motion to dismiss, eliminating the breach of contract claim under *Ebbert*, and denied Defendant's motion to disqualify Plaintiffs' counsel altogether.  (DE 23.)

On March 20, 2023, with Court involvement, the parties settled this case in principle and worked out remaining issues amongst each other.[2]  (*See* Electronic Order dated Mar. 20, 2023; DE 30.)  Plaintiffs[3] now move in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), for approval of parties' settlement agreement.  (DE 31.)

---

[2] The related cases, *Davidson et al. v. Cnty. of Nassau*, 18-cv-1182 and *Abbananto et al. v. Cnty. of Nassau*, 19-1102 were also settled on this date.  (*See* Electronic Order dated Mar. 20, 2023.)

[3] Although Plaintiffs submitted the present motion, the Court construes the motion as a joint application of both parties.

All parties have signed a consent form, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ.

P. 73, granting this Court power to conduct all proceedings in this matter and enter final

judgement. (DE 27.)

## STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

> (i)     a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or
> (ii)    a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under

Rule 41 because of "the unique policy considerations underlying" the act.  796 F.3d at 206.  Such

considerations include the laudable aim of "'extend[ing] the frontiers of social progress by

insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'"

*Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).  Accordingly, in this

Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the

approval of the district court or the [Department of Labor] to take effect."  *Id.*

Generally, "if the proposed settlement reflects a reasonable compromise over contested

issues, the settlement should be approved" by the reviewing court.  *Ceesae v. TT's Car Wash

Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal

quotation marks and citation omitted).  In reviewing the reasonableness of the proposed

settlement, courts consider the totality of the circumstances, including relevant factors such as:

(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the

4

parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.¸* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

> Factors weighing against settlement approval include:
>
> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* factors demonstrates that the agreement is reasonable, the court must still consider whether the settlement "complies with the Second Circuit's admonitions as articulated in Cheeks." *Ezpino v. CDL Underground Specialists, Inc*., 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), report and recommendation adopted by 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted).  Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. See 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's to be paid by the defendant, and costs of the action.") (emphasis added); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a

Cheeks review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

It is against this backdrop that the Court reviews the proposed settlement and motion.

## DISCUSSION

### *Settlement Agreement*

The parties' proposed resolution is embodied in a settlement agreement fully executed on May 30, 2023. (DE 32.)  The agreement provides that Defendant be released of liability for all claims[4] that were or could be brought based on the factual allegations in the Action.[5]  (*Id.* at 3-4.) If approved, Defendant would pay, in exchange for dismissal of this suit, $1,200,000, which would cover settlement payments to Plaintiffs including liquidated damages, participation fees, proposed attorneys' fees, and litigation costs and disbursements to Plaintiffs' counsel.  (*Id.* at 4.) Plaintiffs' counsel would receive $175,000 in attorneys' fees, costs, and expenses.  (DE 31 at 2.) For the reasons set forth below, the Court finds that these terms are acceptable.

### Reasonableness

Having reviewed the submissions, the Court finds that the five *Wolinsky* factors weigh in favor of approval.

*First*, the settlement agreement provides for a total payment of $1,200,000 to 27 Plaintiffs as well as attorney fees and other fees.  (DE 31 at 1, 5.)  Plaintiffs claim there is a *bona fide* dispute between the parties—Defendant failed to compensate Plaintiffs for their overtime or give

---

[4] This release does not affect any claims brought by the Plaintiffs in *Arciello, et al. v. Cnty. of Nassau*, 16-cv-3974 and *Aliberti, et al. v. Nassau Cnty.*, 15-cv-7111.  (DE 32 at 4.)

[5] The settlement agreement makes clear that, in addition to the Nassau County Legislature approval, the parties may need approval of the Nassau Interim Finance Authority as well.  (DE 32 at 2.)  The parties' retirement pay would also require the New York State and Local Retirement System's final approval.  (*Id.* at 5.)

them breaks during their 12-hour shifts. (*Id.* at 4.)  The County has vehemently opposed these claims, arguing that not all of the listed Plaintiffs worked the shifts in dispute and thus were not entitled to the overtime.  (*Id.*)  During mediation, Plaintiffs' counsel posited that if they were successful in litigation, they could potentially receive over $800,000 in damages just for the amounts owed in 2019 through 2023.  (*Id.*)  However, Plaintiffs' counsel came to what they believe is a fair compromise given that not all Plaintiffs may have worked four shifts.  (*Id.*)  As for the issue with Plaintiffs' breaks, counsels reached an understanding that Plaintiffs lost 34,362 hours of break time valued at $583,000.  (*Id.* at 5.)  And, going forward, the FCT Is and FCT IIs will receive 2-hour breaks per day.  (*Id.*)  Plaintiffs' counsel believes that the range of recovery for each of the 27 Plaintiffs could potentially be $41,444, excluding the Plaintiffs that have since retired or passed away.  (*Id.* at 6.)

*Second*, the settlement will allow the parties to avoid extending an already protracted litigation.  Thus, avert what could amount to considerable additional expenses and burdens in preparing their defenses and claims and pursuing further discovery.  The costs of preparing and taking this case through trial and an inevitable ensuing appeal—given the complex FLSA overtime issues and number of Plaintiffs—would have dramatically increased the costs to date.

*Third*, the parties faced significant litigation risk if they proceeded to trial. Plaintiffs pose a real risk for either side at trial when faced with the withheld overtime compensation and the missed breaks compensation.  However, counsel from both sides agree that settling now will save thousands of dollars in fees and expenses as they are able to resolve issues that would not have been rectified if the parties had gone to trial.  It is certainly possible that Plaintiffs could have received nothing following an unfavorable verdict at trial. Settlement, therefore, is an

effective vehicle to avoid the significant risks and costs in further litigating this matter for all parties.

*Fourth*, the countless hours spent zealously negotiating this settlement makes clear that it is a product of arms-length bargaining between the parties. Counsel for both sides are very experienced and have engaged in extensive discovery leading up to this settlement. They have participated in two extended settlement conferences with the undersigned. The advocacy exhibited throughout this litigation demonstrates that the settlement is unquestionably the result of arms-length negotiations.

*Fifth*, there is no indicia, nor is there even a suggestion to the Court, that the settlement is a product of fraud, coercion, or collusion.

Moreover, the *Wolinsky* factors that weigh against settlement do not compel a rejection of the proposed settlement in this case. All affected FCT Is and IIs have been accounted for in this litigation. The likelihood is low that Plaintiffs' alleged circumstances will recur or that Defendant will violate the FLSA in the future. In fact, as a result of this case, FCT Is and IIs will now receive 2 hours of break time per shift or the comparable payment for that time, and, in exchange, Plaintiffs will only receive payment for certain holidays and eliminate mileage reimbursement for non-contiguous overtime. (*Id.* at 7.) Parties have concluded all FLSA and Equal Pay issues and leaving no further record or other determinations to refer to regarding this case. (*Id.*)

Finally, the proposed settlement does not contain any of the problematic provisions outlined in *Cheeks*. This agreement was carefully crafted following the protracted settlement conferences in and out of court, and following the settlements of the other, related cases.

The agreement does not contain a confidentiality provision. Although the settlement features a release (DE 32 at 5), the release merely precludes future lawsuits and duplicative damages arising out of Plaintiffs' overtime claims asserted here which, under the agreement, they will be compensated for.  The release does not affect any claims brought by Plaintiffs in *Arciello v. Cnty. of Nassau*, 16-cv-3974, or *Aliberti v. Cnty. of Nassau*, 15-cv-07111, and only prevents Plaintiffs from collecting damages related to the days worked during the release period in *Abbananto et al. v. Cnty. of Nassau*, 19-cv-01102.  Plaintiffs' other cases, *Davidson et al. v. Cnty. of Nassau*, 18-cv-1182, and *Abbananto et al. v. Cnty. of Nassau*, 19-cv-01102 however, are not otherwise barred from moving forward, and any damages unrelated to Plaintiffs' overtime claims remain in play.  "[T]he Court finds [this release] reasonable, as a narrow release limited to the claims at issue in this lawsuit does not offend *Cheeks*."  *Rotthoff v. N.Y.S. Catholic Health Plan, Inc*., 19 CV 4027 (AMD) (CLP), 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021) (citations omitted).  And, as discussed more fully below, Plaintiffs' counsel has provided the Court with documentation supporting the proposed attorney's fees. The Court therefore finds that the terms of the settlement agreement are fair and reasonable.

## Attorney's Fees

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."  *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted).  Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases.  *Calle v. Elite Specialty Coatings Plus, Inc*., No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp*., No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc*., 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction*

*Mgmt.*, Inc., No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.  Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Plaintiffs' counsel requests $175,000, a far smaller amount than actually expended. That amount includes both attorney's fees, costs, and expenses incurred by Plaintiffs during the litigation.  Specifically, Plaintiffs' counsel builds into this figure time spent reviewing documents for this case and drafting the Complaint and various oppositions.  (DE 31-5.)  As a result, Plaintiffs' counsel would receive $175,000 in legal fees, below the standard one-third FLSA fee ordinarily approved in this Circuit.  Thus, the proposed attorney's fees are reasonable under the percentage method.  But that doesn't end the inquiry.

Having reviewed the statements and billing records of Plaintiffs' counsel, the Court also finds the proposed attorney's fees fair and reasonable after performing a lodestar cross-check. In

utilizing the lodestar approach, courts must multiply a reasonable number of hours required for

the case with the attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154,

166 (2d Cir. 2011); *see, e.g., Li v. Chang Lung Grp. Inc.*, No. 16 Civ. 6722 (PK), 2020 WL

1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300 to $450 is range of reasonable hourly

rates for partners in FLSA cases within the Eastern District of New York); *Kliger v. Liberty

Saverite Supermarket Inc.*, No. 17 Civ. 2520 (FB) (ST), 2018 WL 4782342, at *9 (E.D.N.Y.

Sept. 17, 2018), report and recommendation adopted as modified by 2018 WL 4783964

(E.D.N.Y. Oct. 3, 2018) (noting that the reasonable hourly rates for wage and hour cases in the

district has been set at $300 to $400); *Torres v. Gristedes Operating Corp.*, 04 Civ. 3316 (PAC),

2012 U.S. Dist. LEXIS 127890, at *11 (S.D.N.Y. Aug. 6, 2012) (noting that courts in SDNY

award hourly rates of $550 or more to "extraordinary attorneys held in unusually high regard by

the legal community). Plaintiffs' counsel presents a lodestar amount of $211,250, by multiplying

the 325 hours spent on this case with a $650.00 hourly rate. However, as a compromise,

Plaintiff's counsel now seeks to reduce that amount to $175,000 for a rate of approximately

$538.00 per hour.[6] In light of the complex issues presented by this FLSA case and given Mr.

Stober's extensive experience in labor and civil rights litigation for over 39 years, the 325 hours

expended at $538.00 an hour is eminently reasonable. *See Callender v. Panabori Food Corp.*,

16cv7152 (PKC) (DF), 2018 U.S. Dist. LEXIS 122950, at *44 (S.D.N.Y. July 11, 2018) (noting

that courts in this District have approved hourly rates of $400 or more if the litigator is highly

experienced); *Canales v. Norwich Service Station, Inc. et al.*, 2020-cv-4759 (JMW), 2021 WL

5759727, at *5 (E.D.N.Y. Dec. 3, 2021) (approving a rate of $500 for a named partner of a law

[6] The Court is well aware that Mr. Stober *substantially* discounted his rate in other cases, from $600 per hour to $272.40 per hour in *Chodkowski et al. v. Cnty. of Nassau*, No. 16-CV-5770 (JMW), 2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021) and from $650 per hour to $314.96 per hour in *Aamodt et al. v. Cnty. of Nassau*, 2:22-CV-01520-JMW, 2023 U.S. Dist. LEXIS 44547, at *15 (E.D.N.Y. Mar. 16, 2023).

office); *Sajvin v. Singh Farm Corp.*, No. 17-CV-04032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (noting that partner received $500 per hour in S.D.N.Y. and took his experience, expertise, and reputation in this District into account when awarding him that rate instead of the requested $600); *Torres*, 2012 U.S. Dist. LEXIS 127890 at *14 (affirmatively reducing partner's rate from $650 per hour to $550 per hour for attorney's fees); *cf. Lin v. Joe Japanese Buffet Restaurant Inc.*, 17 CV 3435 (WFK) (CLP), 2022 WL 2718584, at *6 (E.D.N.Y. June 7, 2022) (reducing attorney's fee from $650 to $450 because attorney failed to show he had been awarded such a high fee in a comparable case in this District).  Stober also emphasizes that many more hours will be expended throughout the settlement process that is not even accounted for in this attorney fee amount.  (DE 31 at 3.)  Moreover, this total amount of fees and costs is unopposed by Defendant, weighing in favor of approval of this amount.

Accordingly, the lodestar cross-check affirms the requested attorney's fee of $175,000 which is less than a third of the settlement amount and is fair and reasonable in this case.

## CONCLUSION

Based upon the foregoing, Plaintiffs' motion for the approval of the settlement agreement is granted as submitted, including the award of attorney's fees.   The settlement agreement must now be submitted to the Legislature for approval within 10 days.  Once the negotiability period of ninety (90) days has elapsed for all outstanding checks to Plaintiffs, the undersigned will so order the parties' Stipulation and Order of Dismissal with Prejudice (DE 32).

Dated:  Central Islip, New York
         June 20, 2023

                              S O   O R D E R E D:

                              /s/ *James M. Wicks*
                              JAMES M. WICKS
                              United States Magistrate Judge

12