UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES ALLEN *et al.*,

                        Plaintiffs,                    **ORDER**

     -against-                      22-CV-1572 (JMW)

COUNTY OF NASSAU,

                        Defendant.
------------------------------------------------------------X

**A P P E A R A N C E S:**

Louis D. Stober, Jr., Esq.
**Law Offices of Louis D. Stober, Jr., LLC**
98 Front Street
Mineola, NY 11501
*Attorney for all Plaintiffs*

Deanna Darlene Panico, Esq.
Rhoda Yohai Andors, Esq.
**Bee Ready Fishbein Hatter & Donovan, LLP**
170 Old Country Road
Mineola, NY 11501
*Attorneys for Defendant*

**WICKS,** Magistrate Judge:

       Plaintiffs, who work as Fire Communications Technicians I and II ("FCTs"), commenced this action on March 22, 2022 against the County of Nassau alleging, *inter alia,* (1) violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* for failure to pay the appropriate overtime wages for Plaintiffs' work spent on the job, and (2) the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1) for failure to pay male Plaintiffs at the same rate as female Police Communications Operators ("PCOs") and failure to provide paid breaks to the predominantly male FCTs as was

1

done for the predominantly female Police Communications Operators ("PCOs").[1]  On June 20, 2023, the Court approved Plaintiff's motion for approval of their proposed settlement agreement. (ECF No. 31.)   Before the Court now are cries of breach.

## PARTIES' ARGUMENTS

Plaintiffs' union and Defendant set a schedule for all FCT Is and IIs whereby employees would work 12 hours for three days a week and then receive three days off.  (ECF No. 10 ¶¶ 24-26 at 9.)  Plaintiffs allege that they did not receive any breaks during these 12-hour shifts.  (*Id*. ¶ 28 at 9.)  Of relevance here, the parties' signed memorandum of understanding ("MOU") called for FCTs to receive four 30-minute breaks per 12-hour shift and for FCTs to get up to two (2) hours of compensatory time for missed breaks.  (ECF No. 31-2 at 1.)  Defendant filed a motion to compel seeking assistance in obtaining Plaintiffs' compliance with the settlement agreement. (ECF No. 34.)  Plaintiffs, in turn, opposed and filed a motion requesting, in essence, that the Court compel Defendant to pay them for their 2 hours of compensatory time until a sufficient number of FCTs are hired.  (ECF No. 35.)  This was followed up by Plaintiffs' filing of another application, asserting that the matter was "urgent".  (ECF No. 36.)

**A. Defendant's Motion**

Defendant argues that it has tried to implement the breaks, but Plaintiffs have done a variety of things, including:

---

[1] This case is but one of a series of related cases. In *Chodkowski et al. v. County of Nassau*, No. 16-CV-5770 (JMW), 2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021), this Court approved a three-million-dollar settlement for over 200 PCOs and their supervisors for claims of unpaid wages under the FLSA.  After that action, a small group of PCOs who were hired after the *Chodkowski* collective action opt-in period came forward alleging the same claims. *See Aamodt et al. v. County of Nassau*, 22-CV-1520 (JMW), 2023 U.S. Dist. LEXIS 44547 (E.D.N.Y. Mar. 16, 2023) (approval of FLSA settlement payment of $41,750 and $20,000 in attorney's fees and costs).  And *Allen* is part of a trinity of cases involving similarly situated Plaintiffs alleging claims under the FLSA. *See Davidson et al. v. County of Nassau*, No. 18-1182; *Abbananto et al. v. County of Nassau*, No. 19-1102.

2

- demanding that Defendant pay each FCT 2 hours of compensatory time for the shift worked;

- blackmailing Defendant from doing so by essentially threatening to take photographs of empty consoles although Plaintiffs know the consoles are left open since there is a surplus of consoles in the unit; and

- demanding a pay raise.

(*Id.*).

Although Plaintiffs claim there are not enough staff members to allow the breaks, Defendant responds that staffing levels are "plainly within the managerial authority." (*Id.*) Plaintiffs' tactics, Defendant says, are disingenuous and amount to extortion considering Plaintiffs sued for these breaks that they are now preventing from being implemented. (*Id.*)

### B. Plaintiffs' Opposition and Motion

#### a. *Demand for Compensatory Time*

Plaintiffs concede that they agreed to accept straight compensatory time for two hours of breaks per shift "until there are sufficient FCTs hired to enable the breaks" because doing so would provide management with time to hire more FCTs to allow for these breaks. (ECF No. 35 at 1.) Thus, Plaintiffs argue that Defendant's providing the compensation is a mere *accommodation* until Defendant hires sufficient FCTs. (*Id.*) The rationale behind this provision was because Plaintiff's union wanted a guarantee that more FCTs would be hired and Plaintiffs wanted to be made whole for breaks they missed. (*Id.*)

#### b. *Blackmailing with Photographs of Empty Consoles*

Plaintiffs argue that Defendant was going to leave a console empty during each shift so that an FCT could get his break, but Plaintiffs contend this is a public safety hazard and would require an employee to fill that empty console. (*Id.* at 2.) Defendant responds that it would not

3

let anyone leave their console for the *entire* 12-hour shift. (*Id.*) However, Plaintiffs argue that stripping the console would go against the spirit of the MOU to hire more FCTs. (*Id.*)

    **c.** *Pay Raises*

Plaintiffs disagree with Defendant's notion that they have "demanded" monies from Defendant. (*Id.*) Instead, they only want Defendant to adhere to the MOU and hire FCTs to allow for the breaks but until then, give them the 2 hours of compensatory time per shift as agreed upon. (*Id.*) Further, Plaintiffs suggested providing new FCTs with a "two grade upgrade" to entice applicants to apply so that the current FCTs could get their breaks. (*Id.* at 2.) Further, they argue they have never threatened to go to the media or threatened Defendant with a pay raise. (*Id.* at 2-3.)

Plaintiffs now request that the Court intervene to compel the County to comply with the MOU. (*Id.*) On October 16, 2023, Plaintiffs filed yet another letter with the Court requesting an "immediate conference" to resolve this urgent matter. (ECF No. 36). The undersigned set a Status Conference to discuss Defendant's motion and Plaintiffs' opposition on October 30, 2023. At the Status Conference, the undersigned determined that he needed additional briefings on the matter, including Plaintiffs' counsel's submission of the chart consisting of the sufficient number of FCTs versus the number of current FCTs. (ECF No. 37.) Parties were directed to file such papers. (ECF No. 41.)

## RELEVANT PORTIONS OF SETTLEMENT MOTION AND MOU

There are key portions in the parties' MOU (ECF Nos. 31-2; 35-1) and motion for settlement approval (ECF No. 31) that are relevant here:

- Motion for Settlement Approval (ECF No. 31 at 4, 7):
    - "We were willing to settle by instead of giving the breaks (we realize that would require hiring additional FCT I/IIs), we would settle by crediting 2 hours of comp per day x 3 days of work per week x 52 = 312 hours of comp

4

  per year until the Fire Marshal is able to hire sufficient staff to afford all employees their four 30-minute breaks per shift. It is my understanding that the Fire Marshal is on board with this and to continue this going forward." (*Id.* at 4);

- o "In addition, each FCT I/II will, going forward, receive 2 hours of compensatory time each shift until the Fire Marshall is able to hire enough FCTs to allow for each FCT I/II to receive their 2 hours of breaks each day." (*Id.*);

- o When discussing the second *Wolinsky* factor—the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses: "As part of the settlement, there is a new Memorandum of [Understanding] (also specifically approved by your Honor) that requires 2 hours of break time each shift and/or the payment of 2 hours of compensatory time (thus eliminating the FLSA claims going forward)." (*Id.* at 7.);

- MOU executed May 19, 2023 (ECF No. 31-2 at 15):
  - o "Each 12-hour shift shall include four thirty-minute paid breaks. Such breaks shall be taken at the discretion and with the approval of a supervisor…. Further, it is agreed that until there is sufficient manpower to enable said breaks, all FCTs shall receive up to 2 hours total of compensatory time, at straight time, per shift, as applicable for any missed breaks."

- MOU executed August 7, 2023 (ECF No. 35-1 at 1)[2]:
  - o "Furthermore, it is agreed that Nassau County maintains complete discretion to determine whether sufficient manpower exists to eliminate the Chart Days [the fifth 12-hour shift that may be scheduled within a workweek]."

  - o "Each 12-hour shift shall include four thirty-minute paid breaks. Such breaks shall be taken at the discretion and with the approval of a supervisor."

  - o "Further, it is agreed that until there are sufficient FCTs hired to enable said breaks, all FCTs shall receive up to 2 hours total of compensatory time, at straight time, per shift, as applicable, for any missed breaks."

  It is against this backdrop that the Court considers and determines the present motions.

---

[2] Note this MOU was signed after this Court's approval of the settlement agreement on June 20, 2023. (ECF No. 33.)

## **DISCUSSION**

Plaintiffs focus on language in the MOU that there are not sufficient FCTs to enable the breaks, so they deserve and are entitled to the 2 hours of compensatory time for the missed breaks. They reference a chart which delineates between a sufficient number of FCTs versus the current number of FCTs. (ECF No. 41-3.) According to Plaintiffs, the County needs to hire 7 more FCTs to have "sufficient manpower" to man the 5 dispatcher (FCT I) and 1 supervisor (FCT II) consoles. (ECF No. 41 at 2.) A fundamental issue is *who* has the discretion to decide whether there are sufficient FCTs. According to Defendant, this decision rests with it, which is what prompted it to start providing breaks to Plaintiffs.

However, Plaintiffs claim that the County did not have discretion to give the breaks without hiring a sufficient number of FCTs. (ECF No. 41-1 at 3.) They state that the County only had discretion to determine if sufficient manpower exists to eliminate the Chart Days, but did not have complete discretion to determine if there was sufficient manpower to enable breaks.[3] (*Id.*) They point to the following clause in the MOU: "once there is sufficient manpower to eliminate the Chart Days, Nassau County has the discretion to create a new work chart of 12-hour shifts reflecting the elimination of the Chart Days. Furthermore, it is agreed that Nassau County maintains complete discretion to determine whether sufficient manpower exists to eliminate the Chart Days." (ECF No. 35-1 at 1.) Thus, they request that the Court grant them the two hours of compensatory time per shift for all breaks missed since August 14, 2023—seven days after the settlement was approved by the legislature—and to continue to pay them for the two hours until a sufficient number of FCTs are hired to fill in the chart. (ECF No. 41 at 3.)

---

[3] A "Chart Day" is any fifth 12-hour shift that can be scheduled in the workweek. (ECF No. 35-1 at 1.)

6

Plaintiffs' argument, however, turns a blind eye to the plain language of the heavily negotiated agreement.[4] Read plainly, the MOU states that the employee must consult with the supervisor who then determines when and how these four 30-minute breaks shall be taken. (ECF No. 35-1 at 1.) This language existed in the original MOU when the settlement agreement was first executed in May 2023 and prior to any alterations to the MOU. (*See* ECF No. 31-2 at 1.) Further, it is the employer's (here, the County's) liability if something were to occur because breaks were given according to the settlement agreement and a console was empty during this break. Thus, both parties shall comply with the settlement agreement, whereby Defendant will provide four 30-minute breaks to Plaintiffs and shall be fully responsible for any occurrences that arise while Plaintiffs are on break. These were negotiated terms that the parties must now abide.

## CONCLUSION

Based upon the foregoing, Defendant's motion (ECF No. 34) is granted and Plaintiffs' cross-motion to compel (ECF No. 35) is denied.

Dated: Central Islip, New York
       November 17, 2023

S O   O R D E R E D:
/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

---

[4] *See Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) ("Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract."); *Bailey v. Fish & Neave*, 868 N.E.2d 956, 959 (N.Y. 2007) ("Agreements should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases.").